1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                        * * *

                                           )
9   SALESTRAQ AMERICA, LLC,                )
                                           )
10              Plaintiff,                 )            2:08-CV-01368-LRH-LRL
                                           )
11  v.                                     )
                                           )            ORDER
12  JOSEPH A. ZYSKOWSKI and                )
    DEVMARKETING, INC.,                    )
13                                         )
                Defendants.                )
14                                         )
                                           )
    _____ )
15

16          Before the court is Defendants Joseph Zyskowski and devMarketing, Inc's motion to

17  dismiss (#7[1]).  Plaintiff SalesTraq America, LCC ("SalesTraq") filed an opposition (#12) to which

18  Defendants replied (#14).

19  **I.      Facts and Procedural History**

20          Because the court considers this case on a motion to dismiss, the complaint's allegations are

21  accepted as true.[2] *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

22           Plaintiff SalesTraq is a business that provides information regarding the locations and

23

24  _____

        [1]Refers to the court's docket entry number
25
        [2]The court declines Defendants' request to consider materials outside the pleadings and convert their
26  motion into one for summary judgment.  Presently, discovery is still in its early stages, and the evidentiary
    record appears undeveloped on several important issues.

1  features of residential property in the Las Vegas area.  Before SalesTraq's formation, Larry

2  Murphy, SalesTraq's current managing member, compiled and arranged a wide variety of content

3  concerning residential properties in the Las Vegas area.  This content includes properties' floor

4  plans, measurements, architectural features, and locations.  Moreover, Murphy added content to the

5  compilation that informs users of the properties' key attributes.  The court will refer to the

6  compilation and Murphy's added content as the "Murphy IP."

7      Murphy assigned the Murphy IP to SalesTraq upon SalesTraq's formation in August 2003.

8  Currently, the Murphy IP includes information on nearly 17,000 different models of residential

9  property in the Las Vegas area.  To provide the Murphy IP to interested persons, SalesTraq

10  maintains a website at salestraq.com ("Website"), which grants access to the Murphy IP on a fee-

11  subscription basis.  In addition, on or about the first day of each month, SalesTraq provides a CD-

12  ROM or DVD ("Disc") to subscribers, which contains the entire Murphy IP and new content added

13  during the past month.

14      Defendant Joseph Zyskowski is the president of Defendant devMarketing.  In 2007,

15  Zyskowski, purchased a six-month SalesTraq subscription, which allowed Defendants to access the

16  Website and receive monthly Discs.  After accessing the Website and receiving at least one Disc,

17  devMarketing established (and currently maintains) a website at devMLS.com.  Through its

18  website, devMarketing provides access to content concerning the characteristics of residential

19  properties in the Las Vegas area on a fee-subscription basis.  SalesTraq alleges that Defendants'

20  content is similar to the Murphy IP and includes exact reproductions of the content Murphy added

21  to inform customers of properties' key attributes.

22      On January 2, 2008, SalesTraq asked devMarketing to remove all content from its website

23  that infringes SalesTraq's copyright.  After devMarketing failed to do so, SalesTraq filed the

24  present lawsuit.

25  ///

26

1
**II.     Legal Standard**

2       To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the

3 Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela*

4 *Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short

5 and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

6 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however,

7 a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

8 cause of action" will not suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell*

9 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

10      Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

11 accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal

12 quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows

13 the court to draw the reasonable inference, based on the court's judicial experience and common

14 sense, that the defendant is liable for the misconduct alleged.  *See id.* at 1949-50.  "The plausibility

15 standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

16 defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

17 defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

18 relief."  *Id.* at 1949 (internal quotation marks and citation omitted).

19 **III.    Discussion**

20         **A. Copyright Infringement**

21      Count One of the complaint alleges Defendants infringed SalesTraq's copyright in the

22 Murphy IP by reproducing and displaying substantially all of the content SalesTraq uses to inform

23 its subscribers of key attributes regarding Las Vegas area properties.  Defendants move to dismiss

24 this count on the basis that (1) this court lacks subject matter jurisdiction to consider an

25 infringement action because SalesTraq did not comply with the Copyright Act of 1976's

26

1    registration requirements, and (2) SalesTraq's allegations fail to state a claim upon which relief can

2    be granted.

3              **1.    Registration**

4              Defendants argue that SalesTraq failed to meet 17 U.S.C. § 411(a)'s requirement of

5    copyright registration prior to initiating a suit for infringement.  In pertinent part, § 411(a) states,

6    "[N]o civil action for infringement of the copyright in any United States work shall be instituted

7    until preregistration or registration of the copyright claim has been made in accordance with this

8    title."  Courts generally agree that § 411(a) creates a condition precedent to a court's exercise of

9    subject matter jurisdiction in an infringement action.  *See* 2 Melville B. Nimmer & David Nimmer,

10   *Nimmer on Copyright* § 7.16[B][1][a] (2008).

11             In the present case, Defendants do not dispute that SalesTraq followed the formalities of

12   filing a deposit, application, and fee with the Copyright Office.  Instead, Defendants argue that

13   SalesTraq failed to comply with § 411(a) because it registered a 2008 version of the Murphy IP

14   rather than a 2007 version that Defendants allegedly infringed.  The court disagrees.  With the

15   exception of dictum in one district court case, *see Shaw v. Lindheim*, 809 F. Supp. 1393, 1402-03

16   (N.D. Cal. 1992), all the authorities cited by Defendants support the proposition that registration of

17   a factual compilation permits a complainant to assert an infringement claim on an underlying work

18   that is owned by the complainant.  *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747

19   (2d Cir. 1998); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003);

20   *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 632 (6th Cir. 2001).

21   The leading treatise on copyrights is also in accord with this proposition.  *See* Nimmer & Nimmer,

22   *supra*, § 7.16[B][2][c] ("[W]hen the same party owns the derivative or collective work plus the

23   underlying elements incorporated therein, its registration of the former is 'sufficient to permit an

24   infringement action on the underlying parts, whether they be new or preexisting.'").  Given the

25   weight of this authority, the court concludes SalesTraq has complied with the registration

26

                                          4

1    requirements of 17 U.S.C. § 441(a) as a condition to asserting its infringement claim.

2              **2.      Failure to State a Claim**

3         Defendants also argue SalesTraq fails to set forth a cognizable copyright infringement claim

4    because the Murphy IP is comprised only of uncopyrightable facts or ideas as opposed to

5    copyrightable expression.  The primary authority Defendants rely upon for their argument is the

6    leading case on the fact/expression dichotomy, *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499

7    U.S. 340 (1991).  In *Feist*, a publishing company copied listings from a rural telephone carrier's

8    directory and incorporated those listings into the publisher's directory.  *Id.* at 343-44.  The carrier

9    sued the publisher for copyright infringement, claiming that the publisher's directory infringed the

10   carrier's directory.  *Id.* at 344.

11        On appeal, the Supreme Court held that the carrier's listings were uncopyrightable facts.  *Id.*

12   at 361.  The Court began its analysis by noting two well-established propositions: first, facts are not

13   copyrightable; and second, compilations of facts generally are.  *Id.* at 344.  The key to resolving

14   this tension, the Court explained, is the requirement of originality, which "means only that the

15   work was independently created by the author (as opposed to copied from other works), and that it

16   possesses at least some minimal degree of creativity."  *Id.* at 345.  This requisite level of creativity,

17   the Court elaborated, is extremely low: "[E]ven a slight amount will suffice.  The vast majority of

18   works make the grade quite easily, as they possess some creative spark, no matter how crude,

19   humble or obvious it might be."  *Id.*  (internal quotation marks omitted).

20        The Court also explained that the originality requirement extends to the law's seemingly

21   disparate treatment of facts and factual compilations:

22        Factual compilations . . . may possess the requisite originality.  The compilation author
          typically chooses which facts to include, in what order to place them, and how to arrange
23        the collected data so that they may be used effectively by readers.  These choices as to
          selection and arrangement, so long as they are made independently by the compiler and
24        entail a minimal degree of creativity, are sufficiently original that Congress may protect
          such compilations through the copyright laws.  Thus, even a directory that contains
25        absolutely  no  protectible  written  expression,  only  facts,  meets  the  constitutional

26                                            5

1    minimum for copyright protection if it features an original selection or arrangement.

2    *Id.* at 348 (internal citations omitted).

3    Nevertheless, the Court stated, the Copyright Act's protection for factual compilations is

4    necessarily limited:

> 5    The mere fact that a work is copyrighted does not mean that every element of the work
>      may be protected. Originality remains the *sine qua non* of copyright; accordingly,
> 6    copyright protection may extend only to those components of a work that are original to
>      the author. Thus, if the compilation author clothes facts with an original collocation of
> 7    words, he or she may be able to claim a copyright in this written expression. Others may
>      copy the underlying facts from the publication, but not the precise words used to present
> 8    them.

9    *Id.* (citation omitted).

10   The Court also noted the situation "[w]here the compilation author adds no written expression but

11   rather lets the facts speak for themselves . . . ." *Id.* at 349.  Under that scenario,

12

> 13   [t]he only conceivable expression is the manner in which the compiler has selected and
>      arranged the facts. Thus, if the selection and arrangement are original, these elements of
> 14   the work are eligible for copyright protection.  No matter how original the format,
>      however, the facts themselves do not become original through association.

15   *Id.* (citation omitted).

16   Thus, the Court explained, "[T]he statute envisions that there will be some fact-based works in

17   which the selection, coordination, and arrangement are not sufficiently original to trigger copyright

18   protection." *Id.* at 358.  Under this formulation, "the vast majority of compilations will pass this

19   test, but not all will.  There remains a narrow category of works in which the creative spark is

20   utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359.

21   Applying this standard the facts in *Feist*, the Court held that the carrier's telephone listings

22   did not fall within the Copyright Act's protection.  While acknowledging that the standard of

23   originality for factual compilations is low, the Court nevertheless found that the carrier failed to

24   meet its burden of showing its listings were copyrightable expression. *See id.* at 362.  In the

25   Court's words, the listings "could not be more obvious: It publishes the most basic

26

6

1   information–name, town, and telephone number–about each person who applies to it for telephone

2   service.  This is 'selection' of a sort, but it lacks the modicum of creativity necessary to transform

3   mere selection into copyrightable expression."  *Id.*  The court also found originality lacking in the

4   carrier's coordination and arrangement of facts, as "[t]he white pages do nothing more than list

5   [the carrier's] subscribers in alphabetical order."  *Id.*  In sum, the court found that constituent

6   elements of the directory fell short of a "*de minimis* quantum of creativity" because its facts were

7   selected, coordinated, and arranged in a way that "utterly lacks originality."  *Id.* at 363-64.

8           Turning now to the case at bar, the court concludes that the facts alleged in support of

9   SalesTraq's copyright infringement claim meet the notice pleading standard of Federal Rule of

10  Civil Procedure 8(a)(2).  Paragraph 10 of the complaint alleges, "Mr. Murphy compiled and

11  arranged a wide variety of content regarding characteristics of different residential properties in the

12  Las Vegas, Nevada geographical area, including those properties' floor plans measurements,

13  architectural features, location information and other characteristics (the 'Base Property

14  Content')."   Had SalesTraq alleged only the facts in paragraph 10, the court might agree with

15  Defendants that SalesTraq's complaint does not plausibly allege that the Murphy IP contains

16  copyrightable expression.  That is, paragraph 10 does not allege any facts to show that SalesTraq's

17  presentation or arrangement of the Base Property Content has any modicum of creativity as

18  required by *Feist*.  Nevertheless, the court need not decide that issue because the complaint's

19  following paragraph sufficiently alleges that the Murphy IP contains copyrightable expression.

20          Paragraph 11 alleges, "As part of the presentment of the Base Property Content, Mr.

21  Murphy authored additional content (the 'Information Content') informing Base Property Content

22  users of key attributes of each model of residential property in the Base Property Content . . . ."

23  While paragraph 11 does not go into detail about the level of creativity inhering in the Information

24  Content, SalesTraq plausibly alleges the Information Content coordinates or arranges the

25  underlying Base Property Content in such a way that the Information Content possesses a *de*

26

7

1   *minimis* quantum of creativity.  In particular, authoring content regarding key attributes of

2   properties implies a greater degree of creativity that the alphabetization rejected in *Feist*.  *See also*

3   *Urantia Found. v. Maaherra*, 114 F.3d 955, 958-59 (9th Cir. 1997) (finding originality in a book's

4   selection and arrangement of celestial revelations).  The court therefore concludes SalesTraq has

5   stated a claim for copyright infringement.

6       **B.  Violation of the Computer Fraud and Abuse Act**

7       Defendants also move to dismiss Count Three of SalesTraq's complaint, which alleges

8   fraud under the Computer Fraud and Abuse Act (CFAA) pursuant to 18 U.S.C. § 1030(a)(4). Title

9   18 U.S.C. § 1030(a)(4) provides,

10      Whoever . . . knowingly and with intent to defraud, accesses a protected computer
        without authorization, or exceeds authorized access, and by means of such conduct
11      furthers the intended fraud and obtains anything of value, unless the object of the fraud
        and the thing obtained consists only of the use of the computer and the value of such use
12      is not more than $5,000 in any 1-year period . . . shall be punished as provided in
        subsection (c) of this section.

13

14  Subsection (g) provides for civil enforcement of 18 U.S.C. § 1030(a)(4).

15      In the present case, SalesTraq alleges Defendants obtained a license to access the Website

16  but exceeded their authorized access by copying content from the Website and using that content

17  for Defendants' commercial use.  (Compl. (#1) ¶¶ 53, 54.)  This allegation, however, does not

18  raise a right to relief under 18 U.S.C. § 1030(a)(4).  There is a crucial difference between misusing

19  information properly accessed and exceeding one's authorized access to obtain restricted

20  information.  This case falls into the former category, as SalesTraq acknowledges in its complaint

21  that Defendants paid to access the content on SalesTraq's Website.  (*See id.* ¶ 20); *see also U.S.*

22  *Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1192 (D. Kan. 2009) ("[A]ccess to a protected

23  computer occurs 'without authorization' only when initial access is not permitted, and a violation

24  for 'exceeding authorized access' occurs only when initial access to the computer is permitted but

25  the access of certain information is not permitted.").  Defendants' motion to dismiss is therefore

26

8

granted as to Count Three.

### C.  State Law Claims

#### 1.  Preemption

Defendants also move to dismiss SalesTraq's claims for commercial misappropriation, unjust enrichment, and breach of a nonexclusive license on the basis that these claims are preempted by 17 U.S.C. § 301(a), which provides that federal copyright law preempts any other "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . ." *See also Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984).

Preemption analysis under the Copyright Act involves determining whether a state claim contains an element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *See Summit Mach. Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993).  Under this analysis, if an act of copyright infringement also necessarily violates a state created right, the state created right is preempted. *See id.* at 1440; *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992).

Defendants argue SalesTraq's state claims are preempted by the Copyright Act because each of the state claims merely alleges that Defendants unlawfully copied the Murphy IP.  The court disagrees.  The Ninth Circuit considered a similar case in *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, where the court faced the issue of whether a plaintiff's claims for conversion and unjust enrichment were preempted by the Copyright Act.  958 F.2d 896 (9th Cir. 1992).  The plaintiff in *Rasmussen* engineered modifications to a DC-8 aircraft that allowed the plane to carry significantly more weight. *Id.* at 899.  In order to obtain the FAA's approval for the modifications, however, the plaintiff had to obtain an FAA certificate. *Id.*  After the plaintiff succeeded in this endeavor, the defendant used a copy of the plaintiff's FAA certificate to obtain FAA approval for its own modified DC-8. *Id.* at 899-900.

On appeal, the Ninth Circuit held that the plaintiff's unjust enrichment and conversion

claims were not preempted.  The court reasoned that were the plaintiff claiming an exclusive right to copy the FAA certificate, which was an uncopyrightable government form, his claim would be preempted by the Copyright Act.  *Id.* at 904.  The court, however, distinguished the plaintiff's claims from the mere act of copying:

> Enforcement of [the plaintiff's] property right in his [certificate] leaves [the defendant] free to make as many copies of the certificate as it wishes . . . . That [the defendant] is prevented from then using these copies to obtain an airworthiness certificate from the FAA does not interfere in any way with the operation of the copyright laws.

*Id.*  Thus, the court made a key distinction between a claim for improper copying of the certificate–which would be preempted–and a claim for improper use of the certificate–which was not preempted.

In the present case, SalesTraq's state claims allege, not only that Defendants copied the Murphy IP, but also that Defendants used the Murphy IP for their own commercial benefit in violation of state law.  Thus, under *Rasmussen,* SalesTraq's allegations change the nature of its state claims so that they are qualitatively different from a copyright infringement claim.  SalesTraq's state claims are therefore not preempted by the Copyright Act.

### 2.    Failure to State a Claim

 Defendants also move for dismissal of SalesTraq's state claims on the basis that they fail to state a claim upon which relief can be granted.  Defendants first argue the state claims must fail because they all reference a September 2008 edition of the Murphy IP rather than a 2007 edition from which Defendants claim they copied.  Defendants' argument is without merit.  Although SalesTraq's state claims do reference the September 2008 edition, the complaint's allegations can also be plausibly read to allege Defendants' misuse of an earlier edition.  (*See* Compl. (#1) ¶¶ 20-26.)

Defendants also attack the sufficiency of SalesTraq's breach of a nonexclusive license claim on the basis that it fails to allege an explicit agreement limiting Defendants' use of the

Website's content.  Again, Defendants' argument is not well-taken.  Even if the terms of SalesTraq's license were not explicitly stated, SalesTraq allegations suffice to state a claim for an breach of an implied license agreement.  *Smith v. Recrion Corp.*, 541 P.2d 663, 665 (Nev. 1975) (discussing elements of a claim for breach of an implied contract).

**IV.    Conclusion**

SalesTraq's allegations concerning the character of the Murphy IP suffice to show that the Murphy IP is at least partially comprised of copyrightable expression.  SalesTraq has therefore stated a claim for copyright infringement.

Because SalesTraq's CFAA count does not allege Defendants accessed restricted information in an unauthorized manner, SalesTraq has failed to allege facts to support a claim under 18 U.S.C. § 1030(a)(4).

Finally, because SalesTraq's state claims allege that SalesTraq improperly used the Murphy IP, these claims are not preempted by the Copyright Act.  SalesTraq's state claims also state a claim for relief under Federal Rule of Civil Procedure 8(a)(2).

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (#7) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 10th day of June, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

11